Our fifth argument of the morning is in Appeal No. 24-1307, Mesco Manufacturing v. Motorists Mutual. Mr. McNamara, good morning. Good morning, Your Honor. May it please the court, I'd like to have a conversation today about whether the district court's ruling that Motorists Mutual cannot apply exclusions in the insurance policy to an appraisal award, as it's contrary to Indiana's precedent, limiting the appraisal process to setting the amount of loss. Motorists Mutual believes that the Indiana precedent was not changed by this court in the Villas of Winding Ridge v. State Farm, such that the district court's order should be overturned. In interpreting Indiana, in interpreting insurance policies in Indiana, these are insurance contracts that are enforced according to the terms, even if it limits coverage. Courts cannot extend coverage and cannot rewrite clear and unambiguous language. We believe the district court did just that when it limited the reason to deny coverage following an appraisal after an appraisal award under the idea that the late issue, or I'm sorry, issues of late notice or failure to comply with policy requirements are the only bases to deny coverage following an award. Importantly in Indiana, the case law for more than 50 years is that Indiana's limited the appraisal process to determine the amount of loss. The Atlas Construction v. Indiana Insurance was clear on that. It noted that other possibilities, such as liability, are not determined by the appraisal panel. Appraisal is simply a factual assessment of a claim. It's independent of the legal cause of the damage that's being assessed. The Atlas Court relied heavily on the Mississippi Supreme Court case of Hartford Fire Insurance v. Jones, and Jones explained that unlike arbitration, which is a appraisal, simply a method of ascertaining value or the amount of damages stipulated in advance by the parties. It can, however, involve the question of causation, can't it? Under Atlas and its progeny, it says coverage and is something that is not determined. I said causation. Causation and coverage are not determined with finality by the appraisal panel under Atlas and Wiedemann. They are, while the courts acknowledge that they may determine some aspects of coverage, the idea is the courts and not the appraisal panel are the ones that are supposed to determine whether the loss is covered. That's what's clear, clearly set out by Atlas and Wiedemann. Oh, your appraisal, appraiser says you got hail damage. You've got other stuff up there, wear and tear, whatever. I'm looking at the hail damage. This is what the bill is. He can do that. Your Honor, they can determine the amount of loss, but the idea, again going back to the idea of the Hartford Fire Insurance v. Jones case, which talks about an arbitration where some of that information as to when the hail may have happened and what the condition of the roof was prior to the loss can be put forth to an arbitrator. But under the circumstances, and as we pointed out in our initial brief, the appraisal panel did not have a number of items of information relating to the roofs in So, by denying Motorist Mutual's ability to apply the exclusions in the policy, such as wear and tear, you've deprived Motorist Mutual of its rights that were set out by the Atlas construction. You've had this, you or other insurance companies, have had problems with this language throughout the United States, haven't you? Yes. In other states, we acknowledge that courts have allowed coverage determinations by the appraisal panel. However, again, since at least the Atlas case back in 1974, that right has not been granted. And if you look at the appraisal language in the policy, there's no reference to liability. It only talks about determining the amount of loss or the value of the property. Nowhere in there is a reference to liability under the policy. What do you do with the Villas case? The Villas case was not a challenge under the right to deny clause. The Villas case was a challenge under the exceptional circumstances, whether there was lack of impartiality by the appraisers, whether there was fraud, whether there was other misfeasance. The Villas case specifically stated that the umpire did not determine coverage. So it was not an issue whatsoever. And that's that's the position that Motorist maintains here. Let me ask your opinion on something else then. Given the disarray in the country on this language, the practical ambiguity which Villas causes, whether you can doctrinally distinguish it or not, why don't we certify the issue to the Indiana Supreme Court, let them tell us what this language means, at least in the Hoosier State? I believe that would be an acceptable result to Motorist Mutual, but we don't, we don't believe that Villas creates any sort of ambiguity because it did not reach the issue that we're here to discuss today. I wonder if we, no matter how we decide this and how carefully we parse the language, if you've got Villas in this case sitting there, you haven't, we haven't done much to give certainty to the law of Indiana, have we? I disagree, Your Honor. I think you would give certainty. Again, Villas was determined under the exceptional circumstances standard. That was the only challenge there. State Farm in that case paid the appraisal award in full. They did not challenge whether there was a covered, coverage decision in that, in that matter. This again, this is Motorist Mutual challenging the decision that they were, there was covered loss to two separate buildings. So we believe, we believe the two, the two decisions can stand on their own. Can I ask you a question about, you enlisted or your fellow named Mr. Barron, correct? Edwin Barron, who was an engineer. Correct. And as I, as I read the briefs, I understood that the charge to Mr. Barron was to, there's three roofs in question, maybe more than that, but at least three that this narrowed to, and he was to go out and inspect the roofs and form an opinion about hail damage, correct? Correct. Okay. And one of the roofs that there's a lot of argument about is this roof with, this isn't my world, bitumen, modified bitumen. That has to refer to some kind of surface level, surface condition or something. Correct. Okay. So when he inspected that, he was of the view that there was either no or very minimal hail damage, correct? Correct. Okay. So the difficulty that, that I have with that is I think that's all for determining what the loss is. That you, you have to figure out, is there, is there a loss that's caused by hail damage as opposed to, you know, the reason you put these pictures in the brief, or at least for me, is I thought you were trying to say, there's all kinds of things that have happened to this roof other than hail. Correct. Right? Yes. Okay. So you have to figure out, is there, is there damage caused by hail? And if the answer to that is yes, what's the cost to either repair or replace it? There's also additional questions as to when that damage may have taken place. If, if say, hail did not fall during the policy period. I get that. So that, so the right, the, what do we call it, the right to deny clause? Correct. Okay. That, I understand that. That if you said yes, we all agree there was a hail storm, but it was two years before the policy became effective. The right to deny clause would seem to have effect there. Correct. Okay. But in a world where we don't have that kind of dispute, and the Mr. Barons of the world are doing what they're doing, it's hard for me to see how when an appraiser comes up, there's a dispute, we get an umpire involved, and the umpire comes up with an amount, how the umpire is not necessarily concluding two things. One, that there's loss, or there's damage caused by hail, and two, it's going to cost this much to repair or replace the roof because of that damage. Because I think, isn't that the whole point of a Mr. Barron? Mr. Barron was an engineer hired by Motorist after it received the appraisal demand, and received an estimate that way exceeded the Motorist's initial estimate. Right, because your client's position... So Mr. Barron wasn't a part of the... No, no, no, I know that. But, but you, you enlisted him, I think, because you thought there's no way there was this much damage from the hailstorm. Correct. Right, and let's get Barron out there and get him up on the roofs looking at him, and that's what he did. And he issued an opinion indicating that there was not covered loss up there. Right, so why isn't that the kind of stuff that goes in front of the umpire, where you say, Madam umpire, no, no, there's no hail damage, this is wear and tear, it's weather, whatever it is, but it's not hail. I see my time is up, Your Honor. The case law that's developed in Indiana, if Motorist Mutual, which it did here, finds any sort of damage, and the insured says, well, I'm going to demand appraisal, even if Motorist says, well, this damage is limited, and in this case it was to some guttering, downspouts, and the like, but the insured says, well, we think that there's damage to the entirety of all the roofs, or whatever it may be, and under those circumstances, Motorist has to go to appraisal, even though it's denied a significant portion of the claim, saying that there's no damage. They're under the case law that we've set out in our brief. Right, I understand. That's what I would have thought. That's what appraisers do. That's what umpires do. But in Indiana, it still reserves the right to the insurance company to deny the claim if there is a question of coverage. That is supposed to go to the court, to the jury, to determine whether there is a covered loss under the circumstances. And that's what Atlas, and that's what Schiffrin, Pebble Point, and the like, all thought. It just seems awfully, okay, I got it. I understand. Thank you. All right, you're welcome. We'll give you some rebuttal time. Mr. Byers, good morning. Good morning, Your Honor. Bill Byers for the appellee, Mesco Manufacturing. I'd just like to make a couple comments real quick to the panel. The Settlement Circuit, from our review, has never issued a decision disturbing the factual findings of an appraisal award. And that's essentially what the insurance company wants in this case. Now, I do this argument between different courts in Indiana probably about 15 times a year. And the way I simplify it for the court, and to address your point about certification, I don't recall a time I've lost this argument. Okay, so this is really a pretty straightforward situation, as I think common sense would dictate. The key is in the dictionary to understanding exactly what's going on. So when you have causation, that is what caused the damage or caused the amount of loss. When you have coverage, you're talking about the risk that the policy insures against. Those are two different issues, right? So, for example, if the appraisal panel in this case would have gone out and written up an appraisal award for hail damage, they're determining the cause of that damage as being from hail to the property. Now, you can have in some policies, you can have, for example, a roof exclusion. And the roofs aren't covered at all because it's not within part of the risks insured against. You could have a policy, say for example, that does not cover hail. Are you arguing, in effect, for a fact-law distinction here, in effect, if it's a factual issue, it's in the appraiser's bailiwick, if it's a legal question, i.e., what's covered, what's not, under the text of the policy, that's a matter of coverage? And that's a hundred percent correct, Your Honor. That's the key distinction in this, is the appraisal panel determines the factual situations, and then if there's an issue, right, to dispute among whether or not that you take those facts, match it up to the policy, if that creates an issue of coverage, well then, that's something for the court to adjudicate. So, for example, let's say that there's a dispute about whether or not the roof exclusion applies, or whether or not there's a cosmetic exclusion in the policy that applies to the claim. A court would look at that, or a matching exclusion, all right? You could have an issue where the policyholder may say, well, there's insurance coverage in my policy for matching, the insurance company may say it's excluded, but the factual determination, if you look at the Windridge case, for example, decided by this court, the factual determination that the signing doesn't match, is not a reasonable match, is made by the appraisal panel, because they actually go out there and look at it. So, one thing I would also like to point out is the term liability. So, when opposing counsel cites the Atlas case to talk about liability is not determined by the appraisal panel, that's an accurate statement, but you have to know what liability means. And liability, because it's talking, in the Atlas case, it's discussing liability within the contracts of arbitration. Appraisal is not arbitration, it's different. Liability means, basically, that the amount owed by the insurance company is decided, okay? And so, what you have is you have, say, for example, you get an appraisal award back and it's for $500,000, all right? That's not a decision on liability, because the insurance company has to take that, they have to take a look and see what their policy limit is. Policy limit may be only $400,000. Well, then they issue a check for $400,000. There may be a $10,000 deductible. They apply the deductible. That is a decision on liability. So, when you take this matter to court, say an appraisal doesn't happen, you take this matter to court, you present the deductible to the jury or the judge. You present the policy limit to the judge. In a verdict, a fixing liability is issued accordingly. Same thing in arbitration. If you submit everything to arbitration, the arbitrators are going to decide what the liability is under the policy. So, it sounds, Mr. Barton, it sounds like you do this a lot. I do. Okay, and is it fair to say that someone like Mr. McNamara can go to the umpire with a report from somebody like Engineer Barron and say, there's just, there's nowhere near this much hail damage. And that is routinely done. Is that the kind of stuff that happens? That's routinely done. And the way it's handled is the umpire, the policyholder's appraiser, and the insurance company's appraiser, they consider it. And they take a look and sometimes the umpire says, or the other appraisers say, you know what, I think the engineer's right. I'll issue a word accordingly. In this case, when you look at the timeline, Mr. Barron's report, whose primary field is accident reconstruction, his report on this was a month before the umpire decision. And from what I recall, Mr. Myers had that available to him, the umpire in this case. But when you take a look at the Atlas case, and this is one of the things that, because they hinge a lot on the Atlas case, the Atlas case in no certain terms ever says that the appraisal panel cannot determine causation. That sentence is not within that case whatsoever. The important context of the Atlas case was it was a total loss. So in a total loss from a fire, you're not going to determine causation. Okay, so the issue of whether the appraisal panel can determine causation was never, never precluded by Atlas. Here's the key language from Atlas. And I, and they cite this over and over again, and I've never understand how it helps their position. It says liability is not fixed by means of an appraisal. We've already talked about that. There is only a finding of value, price, or amount of loss or damage. And then it goes on to talk about appraisers are allowed wide discretion and are expected to act upon their own knowledge and investigation. And that's exactly what the appraisal panel did in this case. So when you look at, for example, and I think that Winding Ridge did decide this issue because the the policyholder in that case complained that the umpire made a determination on the scope of the loss. And that's exactly, that award was upheld. And no, no award before this court has ever been disturbed on the factual findings of the award. What this court has issued decisions on is, say for example, if there are other circumstances where the insurance company does not have to pay that award. So for example, in Legends Creek there was an appraisal award, but the suit limitation period had expired before everything got going and got issued and the policyholder couldn't recover on that award. But the factual findings of the award would never disturb. So the other thing I would like to point out, there seems to be for some reason I've never been able to really understand it, a really a twisting of the meaning of loss, right? Because the defense says routinely, well they can only determine the value. And you say, well the value of what? Well the hail damage. Well how much hail damage is there? Well go out and figure that out, appraisal panel. That's what happens. And so when you look at the meaning of the appraisal language in this case, it says value or amount of loss. Those can be different and so when you look at how loss is defined in this specific policy, loss means accidental loss or damage. So when you substitute amount of loss for the definition, you read it as amount of accidental loss or damage. That's a fair reading of the appraisal clause using the insurance company's own definition. Granted it is in a different coverage part, but nothing in that definition section of the coverage part, it is in the property coverage part of the inland marine coverage. Nothing says that that's an unreasonable definition. And so when you look at accident, when you say, okay appraisal panel, go out and tell me what the accidental loss is or damage. It really makes this question very simple. You just go out and adjust the amount of hail damage that you see out there and you write up an estimate and if two of the three members of the appraisal panel agree to it, that's the appraisal award. I would caution the court, the defense point of view on this would only support a deny, delay, defend policy which appraisal awards, the sanctity thereof, have been in place for over a hundred years and they're meant so the policyholders can resolve claims without going to court. Their view of things, the appraisal panel would just say, well how much does it cost to replace the entire roof without saying the important question as to whether or not the entire roof is damaged by a cause of loss. All right, so thank you judge. I'd ask you to... Did you have, I mean I don't want to cut you off. I'm sorry. Just finish your thought. So yes, so my point is if you have an appraisal that determines the amount that it would cost to replace the roof only without really deciding the claim, well that'll be on day one. Three years later before a jury, the jury says well yes, that roof was all damaged by hail. You can't use that amount anymore because it's three years old. It's not fair to the policyholder, right? And so this type of situation would only support a deny, delay, defend policy by the insurance company. The rule of law in Indiana, as discussed by Whining Ridge, is really very clear. The appraisal panel makes the factual findings. The insurance company probably pays the award like it's supposed to do within 30 days in this case. Okay, Mr. Myers. Thank you very much. Thank you. Appreciate it. Mr. McNamara. Yep, we'll give you a minute. Your Honor, here Morris Mutual paid the portion of the appraisal award it agreed was covered damage, and that's typically what happens. And the case law that we've set out notes that the good appraisal award will identify the agreed upon loss and set aside the disputed amount of loss for later determination. We believe the case law is pretty clear from Atlas to Schifrin to Pebble Point that the insurance companies can determine coverage after the fact. Otherwise, you're writing out that last sentence of in the appraisal provision. We believe the Seventh Circuit has not confronted this very issue that we have in front of you today. The Seventh Circuit has only been determining the exceptional circumstances challenged by the insureds and not by the insurance company. And we believe the Pebble Point and its progeny are on point and that the district court's opinion should be overturned. Okay, very well. We appreciate it from both counsel. We'll take the appeal under advisement.